UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **CHAMPION RETAILCO, LLC.**<br>12121 Champion Way<br>Cincinnati, OH 45241 | : <br> : <br> : | Case No.: _____ <br><br> Judge: _____ |
| **Plaintiff** | : <br> : | |
| v. | : <br> : <br> : | **VERIFIED COMPLAINT FOR PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND** |
| **DAVID OLSEN**<br>3326 Thimbleberry Trail<br>Dacula, GA 30019 | : <br> : <br> : | **OTHER RELIEF**<br><br>(JURY TRIAL DEMANDED) |
| **and** | : <br> : | |
| **CHARLES CLEMONS**<br>1107 City View Terrace<br>Chattanooga, TN 37421 | : <br> : <br> : <br> : | |
| **Defendants.** | : | |

---

For its Verified Complaint against Defendants David Olsen ("Olsen") and Charles Clemons ("Clemons" and, with Olsen, "Defendants"), Plaintiff Champion RetailCo, LLC ("Champion" or "the Company") states as follows:

### Introduction

1. This case arises from the breach of certain covenants owed to Champion by its former employees, Defendants David Olsen and Charles Clemons, and the Defendants' intentional interference with Champion's business relationships with its former employees.

2. While employed with Champion, both Olsen and Clemons served in capacities that required regular and intimate contact with Champion's employees and customers and gave Olsen and Clemons access to the company's confidential and trade secret information.

3. During their respective employments at Champion, Olsen executed an Executive Employment Agreement with Champion (the "Olsen Agreement") and Clemons executed an Executive Employment Agreement and First Amendment to the Executive Employment Agreement with Champion (the "Clemons Agreement" and, collectively, the "Agreements"). In the Agreements, Olsen and Clemons each agreed not to use, permit access to, or disclose Champion's confidential and proprietary information, including, but not limited to, information concerning Champion's former, current, or prospective customers.

4. The Agreements also provided that Olsen and Clemons would not induce, solicit, or recruit, directly or indirectly, any of Champion's employees or current or prospective customers during Olsen's and Clemons' employment, and for a period of 24 months after their employment terminated.

5. Further, Olsen and Clemons agreed in their respective Agreements that they each, for one year after leaving Champion, would not work for Champion's competitors in any geographical areas in which Champion does business.

6. Despite these covenants, after Olsen and Clemons, each, ended their respective employment with Champion, the Company learned that they both took competitive positions with a Champion competitor—Patio Enclosures by Great Day Improvements, LLC ("Patio Enclosures"). Upon information and belief, the Company also learned that Olsen and Clemons were each soliciting and encouraging multiple Champion employees to quit their jobs at Champion and go to work for Olsen's and Clemons' new employer, Patio Enclosures.

7. From at least January to May 2020, as a direct result of Olsen's and/or Clemons' solicitations, several of Champion's employees terminated their employment with Champion and went to work for Patio Enclosures.

8. Olsen's and Clemons' acts constitute breaches of the non-competition and non-solicitation covenants in their Agreements, violations of their obligations not to use or disclose Champion's confidential information, and their intentional interference with Champion's business relationship with its former employees.

9. Champion now prays that this Court will grant it injunctive relief and monetary damages.

## The Parties

10. Plaintiff Champion is a Delaware limited liability company, with its headquarters in Hamilton County, Ohio.

11. Upon information and belief, Defendant David Olsen is an individual residing in Georgia.

12. Upon information and belief, Defendant Charles Clemons is an individual residing in Tennessee

## Jurisdiction and Venue

13. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the controversy is between parties of diverse citizenship and the amount in controversy exceeds $75,000.

14. This Court has personal jurisdiction over Olsen and Clemons because they contractually agreed to submit to the jurisdiction of this Court. In addition, Olsen and Clemons have caused tortious injury by acts or omissions in the State of Ohio, and the causes of action herein derive from such tortious injury caused by acts or omissions in Ohio.

15. Venue is proper in this Court because the parties contractually agreed to this Court's jurisdiction, and because the Defendants contracted with and/or committed tortious acts against Champion, which is located in Hamilton County, Ohio.

## The Facts

### A. *The Nature of Champion's Business*

16. Champion was established in 1953 in Cincinnati, Ohio. The Company designs, builds, and installs windows, doors, and sunrooms. Champion also installs roofing and siding.

17. Champion maintains operations across 29 states, and it has locations in 55 metropolitan areas, including Atlanta, Georgia; Chattanooga, Tennessee; Nashville, Tennessee; and Cincinnati, Ohio; among many other markets.

18. To serve its customers in these markets, Champion employs various types of industry professionals. These range from trained manufacturing tradesmen and marketing and retail professionals, to sales representatives, installation technicians, and executives.

### B. *Olsen's and Clemons' Work for Champion*

19. Olsen joined Champion as a Sales Manager in December 2015 in Atlanta, Georgia. He was promoted to Division Manager in January 2016 for the Atlanta division, and then to District Sales Manager over the Atlanta and Macon, Georgia regions, in January 2018.

20. In consideration for his on-going employment, Olsen agreed to execute the Olsen Agreement with Champion on October 9, 2019. A true and accurate copy of the Olsen Agreement is attached hereto as Exhibit A and is incorporated herein.

21. Clemons joined Champion as a Division Manager in Chattanooga, Tennessee in January 2015 and ran Champion's Chattanooga, Tennessee office until September 2017, after which he was also given responsibility for Knoxville and Nashville, Tennessee. In or around

4

September 2019 Clemons also took over Champion's Birmingham and Huntsville, Alabama offices.

22. At the beginning of his employment with Champion, Clemons agreed to and signed the Clemons Agreement, including the First Amendment to the Executive Employee Agreement.[1] A true and accurate copy of the Clemons Agreement is attached hereto as Exhibit B and is incorporated herein.

23. During their respective tenures at Champion, the work performed by Olsen and Clemons required them to manage relationships with Champion's employees and existing customers, and to develop business with prospective customers. As such, Olsen and Clemons had regular contact with Champion's employees and existing and prospective customers.

24. In addition, Olsen and Clemons had access to and became intimately familiar with Champion's confidential and proprietary information. This information included, but was not limited to, information pertaining to Champion's employees, customers, prospective customers, costs, profit margins, salaries, pricing, strategies, business plans, techniques, methods, processes, sales, finances, sales plans, and other trade secrets.

25. Olsen and Clemons were both highly compensated for their work with Champion, each earning in excess of $100,000 per year.

C. *The Terms of the Agreements*

26. In their respective Agreements, Olsen and Clemons acknowledged that their

> Executive position[s] will require . . . (a) specialized training in the design, use, and operation of the Company's products and services; (b) access to the Company's goodwill, business relationships, and contacts with . . . the Company's customers, potential customers, and employees of those third parties; (c) access to the Company's business, marketing, and/or sales strategies; (d) access to

---

[1] Clemons executed the First Amendment on the same day, March 2, 2015, that he executed the rest of the Clemons Agreement. The First Amendment adjusted Clemons' compensation scheme (Section 3) and adjusted his non-compete period from 24 months down to 12 months (Section 10). *See* Clemons Agreement at pp. 14-19.

>information about the Company's methods of operations, compensation plans, or future business plans; and/or (e) performance of services of a unique and special nature.

Agreements, at § 2.

27. Olsen and Clemons also agreed that, "[t]he Company develops and utilizes technology, models, programs, data, research and development, concepts, goodwill, customer relationships, training, and trade secrets[,]" that "in the performance of [their] job duties, [Olsen and Clemons] will be entrusted with, have access to, and obtain intimate, detailed, and comprehensive knowledge of confidential and/or proprietary information[,]" that such information "is highly valuable and provides a competitive advantage to the Company[,]" and that "given the United States market in which the Company competes, confidentiality of the Information is necessary without regard to any geographic limitation." *Id.* at § 8.

28. As a result, both Olsen and Clemons agreed to retain Champion's information "in absolute confidence and not to use or permit access to or disclose the Information to any person or organization, except as required for [Olsen and Clemons] to perform [their] job[s] with the Company." *Id.* at § 9. To that end, Olsen and Clemons agreed they would not use or disclose Champion's confidential information for their own or any other entity's benefit, and that they would not accept employment with any "entity where any part of the duties of such employment . . . are such that [Olsen and Clemons] could reasonably be induced or required to reveal, base judgments upon, or otherwise disclose or use" Champion's proprietary information. *Id.*

29. In addition, Olsen and Clemons made a non-competition covenant with Champion. Specifically, the Defendants agreed that due to

>the Company's need to prevent unfair competition and to protect the Company's legitimate business interest . . . **for a period of 12 months** . . . . following [Olsen and Clemons]' termination (for any reason), whether voluntary or involuntary, [Olsen and Clemons] will not accept employment in . . . any business activity . . .

6

> with a "Competitor" of the Company where such employment . . . would involve [Olsen and Clemons]: (a) providing, selling or attempting to sell, or assisting in the sale or attempted sale of, or providing or performing management functions, relating to any services or products similar to those services or products with which [Olsen and Clemons] had any involvement or Information during Executive's employment with the Company . . .; or (b) providing or performing services that are similar to any services that [Olsen and Clemons] provided to or performed for the Company during Executive's employment with the Company.

Olsen Agreement at § 10; Clemons Agreement (First Amendment) at § 10 (emphasis in original).

30. The Agreements define "Competitor" as "any business or entity that . . . provides or seeks to provide products or services that compete with the products or services of the Company, including, without limitation, any company or business that installs windows, doors, sun rooms, roofing, and/or siding." *Id.* The restriction is "limited to the geographical area where the Company is doing business, . . . markets its products and/or services . . ., and . . . where the Company had a documented plan in place . . . to commence conducting business . . . ." *Id.*

31. The Defendants also agreed not to unlawfully solicit Champion's current and prospective customers or Champion's employees. Namely, the Defendants recognized that "[t]he Company's business relationships with its customers have been developed through significant effort and often over a period of many years . . . ." Olsen Agreement at § 11; Clemons Agreement at § 11.

> Therefore, [Olsen and Clemons] agree[d] that the Company's communications, relationships, and business dealings with its customers through its employees are not only protected as part of its [confidential] Information restrictions . . ., but also deserves protection in a manner separate from the non-competition restrictions set forth in Section 10[2] above.

*Id.*

32. Thus, in addition to the non-disclosure and non-competition covenants, the Defendants covenanted, for **two years** after leaving Champion, that they would not, in order to try to sell any competitive products or services or try to divert business away from Champion,

---

[2] The Clemons Agreement misidentifies this as "Section 11," which was a typographical error.

7

communicate with "(i) any of the Company's customers from which the Company generated revenue during the 24 months preceding Executive's termination; or (ii) any prospective customers known to [Olsen and Clemons] during the 24 months prior to Executive's termination." *Id.* Olsen and Clemons are also prohibited from accepting any such business from a customer or prospective customer. *Id.*

33. Further, Olsen and Clemons promised that they would not, "directly or indirectly, attempt to or actually induce . . . any current or former Company employee, **at any time**, to violate any of such person's . . . agreement(s) with the Company." *Id.* at § 12 (emphasis in original). And, the Defendants agreed that they would not,

> directly or indirectly, **for a period of 24 months** . . . following [their] termination (for any reason), whether voluntary or involuntary, from the Company: (a) communicate with any current or former Company employee concerning employment opportunities with a competitor; (b) attempt to or actually induce . . any Company employee to terminate such person's employment relationship with the Company, . . .; and/or (c) employ or assist in employing a current or former Company employee in any capacity . . . on behalf of any Competitor.

*Id.* (emphasis in original).

34. The Agreements also explain that because "practical, legal, and/or business considerations may lead the Company not to enforce or to delay enforcement of this Agreement . . . [and that such] election against enforcement or to delay enforcement of this Agreement or any other person's . . . similar agreement . . . shall never be a waiver of either party's right to enforce this Agreement." *Id.* at § 15.

35. Olsen and Clemons further agreed that "any breach or threatened breach of this Agreement would result in material damage and immediate and irreparable harm to [Champion] . . . [and that] any breach of the covenant not to compete and/or non-solicitation covenants described [t]herein would result in the inevitable disclosure of [Champion]'s confidential,

proprietary, and trade secret Information." *Id.* at § 16. Thus, the Defendants agreed that in addition to any other rights and remedies available to Champion, the Company "shall be entitled to obtain an immediate injunction, whether temporary, preliminary, or permanent, in the event of any such breach or threatened breach by Executive." *Id.* And, the Defendants agreed that the restricted periods do not expire until 12 months or 24 months, as applicable, after the date on which the Defendants stop violating the restrictive covenants. *Id.*

36. Notably, the Defendants agreed that they gave "careful consideration of the scope and extent of the restrictions and limitations" in the restrictive covenants. *Id.* After such careful consideration, the Defendants each agreed that the prohibitions and obligations were (a) reasonable in scope, territory, and duration; (b) are designed to eliminate only unfair competition; (c) do not stifle the Defendants' inherent skill and experience; (d) do not prevent the Defendants from using their general abilities to obtain gainful employment; (e) are required to protect Champion's legitimate business interests; and (f) do not give Champion a benefit disproportionate to the Defendants' detriment. *Id.*

37. The Defendants also agreed that Champion "shall be entitled to reasonable attorneys' fees and court cost incurred in any such action which results in: (a) the enforcement of any provision or section of this Agreement against the Executive and to [Champion]'s benefit; or (b) an award of any damages to [Champion]." *Id.*

38. Olsen and Clemons agreed to share their respective Agreements with their prospective and/or actual subsequent employers and also promised not to indicate on any business materials that they are or were formerly employed by Champion. *Id.* at §§ 17-18.

9

39. Finally, the Agreements provide that Delaware law applies; that venue lies and personal jurisdiction is proper in the state or federal courts in Hamilton County, Ohio; and that the Agreements are fully integrated. *Id.* at §§ 19, 22, and 26.

### D. *One at a Time, Olsen and Clemons Leave Champion to Work at Patio Enclosures*

40. On October 25, 2019, Olsen terminated his employment with Champion in the Atlanta, Georgia area to go to work as a Regional Sales Manager for Patio Enclosures, also in the Atlanta area.

41. Patio Enclosures provides sunrooms, windows, and doors, among other products and services. As such, Patio Enclosures is one of Champion's direct competitors.

42. Pursuant to the Olsen Agreement, Olsen was not allowed to work for Patio Enclosures in the Atlanta area and in the Regional Sales Manager role.

43. Under the Olsen Agreement, Olsen was further barred from soliciting Champion customers and employees for a period of 24 months after the end of his employment with Champion.

44. After Olsen's departure, Champion learned that, upon information and belief, Olsen was soliciting and encouraging multiple Champion employees to quit their jobs and to accept employment at Patio Enclosures. One of these employees was Clemons.

45. On March 14, 2020, Clemons terminated his employment with Champion in the Chattanooga, Tennessee area to go to work as a District/Regional Manager for Patio Enclosures in Chattanooga. Pursuant to the Clemons Agreement, Clemons was not permitted to work for Patio Enclosures in Chattanooga as a District/Regional Manager.

46. Under the Clemons Agreement, Clemons was further restricted from soliciting Champion customers and employees for a period of 24 months after the end of his employment

with Champion. But, after Clemons' departure, Champion learned that, upon information and belief, he joined Olsen in soliciting and encouraging multiple Champion employees to quit their jobs and accept employment at Patio Enclosures.

47. In January 2020, Champion became aware that, upon information and belief, Olsen had successfully solicited several other Champion employees who had previously worked for Olsen at Champion in the Atlanta area to leave Champion to go to work for Patio Enclosures, also in Atlanta. In May and April 2020, Champion learned that, upon information and belief, Olsen and Clemons had successfully solicited even more Champion employees who had previously worked for Olsen and Clemons at Champion to leave Champion to go to work for Patio Enclosures.

48. After learning of their departure and solicitation of its employees, Champion made several attempts to persuade Olsen, Clemons, and Patio Enclosures to refrain from soliciting its employees. None of these attempts were successful.

49. As a direct result of Olsen's and/or Clemons' solicitation of these employees in violation of the Agreement, Champion has suffered both actual damages and irreparable harm due to the departure of these employees.

## COUNT ONE: DECLARATORY JUDGMENT

50. Champion restates and realleges the preceding paragraphs of this Complaint by reference.

51. Under the federal Declaratory Judgment Act an interested party may request that the Court declare the rights and other legal relations of parties. Accordingly, Champion, as a party interested under the Agreements, has the right to a declaration concerning the Agreements.

11

52. Furthermore, an actual controversy exists between Champion, on the one hand, and Olsen and Clemons, on the other, regarding the respective rights and obligations of Champion and Olsen and Clemons under the Agreements.

53. A declaratory judgment would terminate those controversies. Champion therefore requests a declaration of its rights and Olsen's and Clemons' obligations under the Agreements.

## COUNT TWO: BREACH OF CONTRACT

54. Champion restates and realleges the preceding paragraphs of this Complaint by reference.

55. The Olsen and Clemons Agreements are valid and legally enforceable contracts into which Champion and Olsen and Clemons, respectively, entered freely and without duress.

56. In exchange for their commitment to be bound by the Olson and Clemons Agreements, Olsen and Clemons, respectively, received adequate and sufficient consideration, including, without limitation, employment, on-going employment, and promotions at Champion.

57. The Agreements are reasonable in scope and are reasonably tailored to protect Champion's legitimate business interests. *See also* Agreements, at § 16.

58. Champion fully performed under the Olsen and Clemons Agreements.

59. Olsen and Clemons have breached and continue to breach their respective Agreements by virtue of the fact that, among other reasons, they have (1) gone to work for one of Champion's direct competitors in the restricted territory to sell products similar to those services with which Olsen and Clemons were involved at Champion and are providing services similar to those they provided to or performed for Champion; (2) upon information and belief, solicited and encouraged multiple Champion employees to terminate their employment with Champion and go

to work for Patio Enclosures; and (3) upon information and belief, used or disclosed Champion's confidential or proprietary information in soliciting Champion's employees and customers.

60. These breaches have proximately caused, and, unless restrained and enjoined, will continue to cause Champion immediate and irreparable harm, damage, and injury for which it has no adequate remedy at law.

## COUNT THREE: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

61. Champion restates and realleges the preceding paragraphs of this Complaint by reference.

62. Pursuant to the Agreement, Champion had business relationships with its former employees.

63. Olsen and Clemons were aware of these business relationships between Champion and its now former employees.

64. Despite this knowledge, upon information and belief, Olsen and Clemons purposefully and intentionally interfered with these business relationships by soliciting and recruiting Champion's employees, which actions directly violate and constitute breaches of the Agreements.

65. Olsen and Clemons have tortiously, willfully, and maliciously interfered with the business relationships between Champion's former employees and Champion, with no justifiable excuse.

66. As a direct and proximate result of the foregoing, Champion has been damaged and continues to be damaged.

## COUNT FOUR: MISAPPROPRIATION OF TRADE SECRETS AND VIOLATION OF DELAWARE TRADE SECRETS ACT

67. Champion restates and realleges the preceding paragraphs of this Complaint by reference.

68. Champion's confidential information constitutes trade secrets within the meaning of applicable law, including 6 Del. Code § 2001(4).

69. Champion enjoys economic advantages from its trade-secret information that is not generally known to Champion's competitors or the public.

70. Champion preserves the confidentiality of its trade secrets by contractually identifying its proprietary information as confidential, restricting access to its facilities to Champion personnel, requiring high-level executives like Olsen and Clemons to enter into restrictive covenants, and restricting access to the trade-secret information through other reasonable methods. Olsen and Clemons have a duty, and knew about their duty, to maintain the secrecy of Champion's trade secrets and other confidential information. *See* Agreements, at §§ 8-9.

71. Champion's efforts to preserve its trade secrets and other confidential information are reasonable under the circumstances.

72. By taking positions with Champion's direct competitor, Patio Enclosures, that are nearly identical to the positions Olsen and Clemons previously held with Champion, Olsen and Clemons have threatened to and inevitably will in the future, unless enjoined by this Court, use and misappropriate Champion's confidential information and trade secrets in violation of the Delaware Trade Secrets Act. *See also* Agreements, at § 16.

73. Because of Olsen's and Clemons' broad knowledge of Champion's trade secrets and other confidential information, and because their roles with Patio Enclosures are the same or

14

similar to the roles each Defendant had with Champion, it is inevitable and unavoidable that Olsen and Clemons will consciously or unconsciously use or disclose Champion's trade secrets in the future in their employment with Patio Enclosures.

74. Champion seeks an injunction prohibiting Olsen and Clemons from using or disclosing the trade secrets or other confidential and proprietary information that they learned while working for Champion.

## COUNT FIVE: PRELIMINARY AND PERMANENT INJUNCTION

75. Champion restates and realleges the preceding paragraphs of this Complaint by reference.

76. Olsen and Clemons have breached their Agreements.

77. In executing the Agreements, Olsen and Clemons expressly agreed that "any breach or threatened breach of th[ese] Agreement[s] would result in material damages and immediate and irreparable harm to [Champion]," that the "any breach of the covenant not to compete and/or non-solicitation covenants described [t]herein would result in the inevitable disclosure of [Champion]'s confidential, proprietary, and trade secret information," that the prohibitions and obligations contained in the Agreements are "reasonable in scope, territory, and duration," and that, "in addition to any other rights and remedies available to it, [Champion] shall be entitled to obtain an immediate injunction . . . in the event of any such breach or threatened breach by Executive." *See* Agreements, at § 16.

78. Unless immediately restrained and enjoined, Olsen and Clemons will cause great and irreparable injury to Champion for which the Company has no adequate remedy at law. There is a substantial likelihood that Champion will succeed on the merits of its declaratory judgment, breach of contract, and violation of Delaware Trade Secrets Act claims. Moreover,

Olsen and Clemons will not be unjustifiably harmed by the Court's granting of injunctive relief, and the public interest would be served by an injunction.

79. Champion seeks (i) a preliminary injunction and permanent injunction for the 12-month period following this Court's Order, precluding Olsen and Clemons from working for Patio Enclosures in violation of the non-competition covenant in the Agreements; (ii) a preliminary and permanent injunction for the 24-month period following this Court's Order, prohibiting Olsen and Clemons from soliciting Champion's customers and employees in violation of the non-solicitation covenant in the Agreements; and (iii) a preliminary and permanent injunction restricting Olsen and Clemons from using or disclosing Champion's trade secrets or confidential and proprietary information, or otherwise breaching the Agreements.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief:

a) Declare, decree, and adjudge that the Agreements are valid and enforceable, and declare, decree, and adjudge the parties' respective rights and obligations under the Agreements;

b) Enter judgment against Defendants in an amount to be determined at trial and in excess of $75,000;

c) Award Champion its reasonable attorneys' fees, costs, and other legal expenses against Defendants, pursuant to the Agreements and to the extent otherwise permitted by contract and law, in an amount to be determined following trial;

d) Award punitive or exemplary damages against Defendants in an amount to be determined at trial;

e) Enter a preliminary and permanent injunction for the 12-month period from the date of this Court's Order precluding Olsen and Clemons from working for Patio Enclosures or otherwise violating the non-competition covenant in their respective Agreements;

f) Enter a preliminary and permanent injunction for the 24-month period from the date of this Court's Order, prohibiting Defendants from soliciting Champion's customers and employees or otherwise violating the non-solicitation covenants in their respective Agreements;

g) Enter a preliminary and permanent injunction restricting Defendants from using or disclosing the trade secrets or other confidential and proprietary information that they learned while working for Champion, or otherwise breaching the Agreements; and

h) Award such other relief as is appropriate, including attorneys' fees and costs.

Respectfully submitted,

_/s/ Richard L. Moore_ e.s.
Richard L. Moore (0062010)
Simon Y. Svirnovskiy (0097096)
Frost Brown Todd LLC
Great American Tower
301 East Fourth Street, Suite 3300
Cincinnati, Ohio 45202
Phone: (513) 651-6800
Fax: (513) 651-6981
rlmoore@fbtlaw.com
ssvirnovskiy@fbtlaw.com

***Trial Attorneys for Plaintiff***
***Champion RetailCo, LLC***

## JURY DEMAND

Plaintiff demands a trial by jury on all matters to which it is entitled.

                                                /s/ Richard L. Moore e.s.
                                                Richard L. Moore (0062010)

## VERIFICATION OF COMPLAINT

STATE OF GEORGIA )
COUNTY OF FULTON ) SS:

I, Victor Yanev, being duly cautioned and sworn, state that I am authorized to act as an agent of Plaintiff for the purpose of verifying the Complaint herein in accordance with the Federal Rules of Civil Procedure. To the extent I have personal knowledge of the matters alleged in the Complaint, the information is true and accurate to the best of my knowledge and belief. As to any matters for which I do not have personal knowledge, I am authorized by Plaintiff to state that Plaintiff is informed and believes that the allegations of the Complaint are true and accurate to the best of its knowledge and belief.

_____

Subscribed and sworn by Victor Yanev before me, a Notary Public, on this 19 day of August, 2020.

_____
Notary Public

4817-6524-4357v7

ZANMAN K. GRAHAM SR.
Notary Public
Kentucky - State at Large
My Commission Expires Dec 28, 2022